UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-00028-H

TERIN SULLIVAN                                                                              PLAINTIFF

V.

PAYCOR, INC.                                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss. Plaintiff, Terin Sullivan, brought suit against her former employer, Defendant, Paycor, Inc. ("Paycor"), claiming that Paycor acted improperly during the course of her employment because of her sex and pregnancy. Specifically, Sullivan advances five Counts in her Complaint: (I) gender discrimination in violation of KRS § 344.010; (II) hostile work environment; (III) constructive discharge in violation of KRS § 344.040 by threatening termination; (IV) retaliation in violation of KRS § 344.280; and (V) fraud. Paycor moves for dismissal of Counts II, III, IV, and V. For the forgoing reasons, the Court will sustain in part and deny in part Paycor's motion.

I.

The Court presents the following statement of relevant facts, which are either undisputed or viewed in the light most favorable to Sullivan. In October 2009, Paycor hired Sullivan as a member of the four-person Small Market Division in its Louisville, Kentucky office. During her employment, Sullivan's immediate supervisor, Victor Wolford, discussed his sex life with her and asked Sullivan to arrange dates for him. In October 2010, Wolford commenced an affair with a

subordinate, and, as a result, allegedly neglected obligations to train, supervise, and assist Sullivan in her job duties. Consequently, Sullivan sought other employment. Paycor's regional supervisor, Chad Gunnera, discovered Sullivan's resume online and requested she stop looking for another job.

In December 2010, Sullivan informed Gunnera that the relationship between Wolford and his paramour interfered with her ability to perform her job responsibilities. One month later, Sullivan announced her pregnancy. Two weeks after the announcement, she received her first negative performance review. By the end of February, Paycor presented Sullivan with a choice of either resigning immediately, on the condition that Paycor would not contest Sullivan's unemployment claim, or improving her performance within a month or face termination. Finding the former her only practical option, Sullivan resigned, but alleges Paycor contested her unemployment claim.

II.

Sullivan claims that Paycor: (1) discriminated against her on the basis of her gender; (2) created a hostile work environment; (3) constructively discharged her by threatening to terminate her employment following a discrimination complaint and pregnancy announcement; (4) retaliated against her for engaging in protected activities when she reported Wolford's relationship with his paramour and announced her pregnancy; and (5) committed fraud when it falsely represented it would not contest her application for unemployment benefits if she voluntarily resigned. Paycor moves to dismiss all claims except the first, concerning gender discrimination. Sullivan contends the motion is premature, and, even so, that she properly pled the claims in the Complaint and subsequent briefing, such that the Court should deny the motion.

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). But, it "need not accept a 'bare assertion of legal conclusions.'" *Id.* at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

While it is unusual to dispose of claims such as these on a motion to dismiss, the Court will consider each claim in turn.

### III.

In Count II of the Complaint, Sullivan contends that Wolford subjected her to persistent and unwanted communications of a sexual nature, sufficient to create a hostile work environment claim. The seminal hostile work environment case, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993), establishes the minimum standards for such a claim. In *Harris*, the defendant explicitly and routinely targeted the plaintiff with gender-based insults and sexual innuendos, even instructing the plaintiff to retrieve coins from the front pocket of his pants. *Id.* at 19. The Supreme Court found in favor of the plaintiff, holding that "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)).

3

To establish a *prima facie* case of hostile work environment on the basis of gender under KRS § 344.040, Sullivan must show: "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (construing Kentucky law); *see, e.g.*, *Thompson v. Louisville Metro Gov't*, 2013 WL 191878, *3 (Ky. Ct. App. Jan. 18, 2013).

Here, Sullivan, an undisputed member of a protected class, alleges Wolford regularly discussed his sex life with her and would ask Sullivan to arrange dates for him with women she knew. Sullivan contends that these discussions interfered with her ability to perform her work duties. These facts alone fall well short of establishing a hostile work environment claim under *Harris*. In particular, the severity or pervasiveness of Wolford's comments are not at all well-established. However, the Complaint need not state every fact in support of a claim. Sullivan has presented a facially plausible hostile work environment claim sufficient to support the reasonable inference that Wolford made these comments because of her gender and that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. Further discovery, particularly Sullivan's own testimony, may demonstrate sufficient severity or pervasiveness to move forward. Accordingly, the Court will deny Paycor's Motion to Dismiss Count II at this time.

IV.

In Count III of the Complaint, Sullivan contends that Paycor violated KRS § 344.040 by constructively discharging her following (1) her complaints of Paycor's discrimination against her and (2) her pregnancy announcement. Further, Sullivan argues that the threat of termination reasonably compelled her to resign.

To properly allege constructive discharge, a plaintiff must establish that the acts underlying the claim amount to an adverse, tangible employment action. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998). Additionally, a plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). In this case, the Court finds that an adverse employment action, so intolerable as to prompt Sullivan's resignation, may support her hostile work environment and discrimination claims, but not substantiate a distinct claim of constructive discharge. *See Ford v. Gen. Motors Corp.*, 305 F.3d 545, 555 (6th Cir. 2002); *see also Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004) ("[W]hile constructive discharge may constitute an adverse employment action within the meaning of the KCRA, not all adverse employment actions constitute constructive discharge.").

Constructive discharge, even if shown, does not support an independent cause of action. Rather, it is a means of proving an element of a gender discrimination claim, or it could be evidence of a hostile work environment. Though the Court will sustain Paycor's Motion to Dismiss Count III, Sullivan is not precluded from raising the issue of constructive discharge where appropriate.

V.

Regarding Count IV of the Complaint, Sullivan argues that Paycor violated the Kentucky Civil Rights Act ("KCRA") by retaliating against her for (1) reporting Wolford's affair with a subordinate and (2) announcing her pregnancy. Specifically, Sullivan contends that the report and announcement are protected activities, and therefore, KRS § 344.280 prevents retaliation against

her.[1]  To establish a retaliation claim, Sullivan must show that her report and announcement constituted protected activities under KRS § 344.040.  Courts construe retaliation under the KCRA the same as under Title VII, its federal counterpart.  *Thompson*, 2013 WL 191878, at *4.  The purpose of anti-retaliation provisions under both KCRA and Title VII is to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

In assessing retaliation claims, the Court applies the *McDonnell Douglas* burden-shifting scheme.  *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005); *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009); *see McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  This framework first requires that the plaintiff establish a *prima facie* case of retaliation by showing: "(1) [the employee] engaged in  protected activity, (2) the employer knew of the exercise of the protected right; (3) an adverse employment action was subsequently taken against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Hamilton*, 556 F.3d at 435 (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)).  If the plaintiff shows a *prima facie* case of retaliation, then the burden shifts to the defendant to provide evidence of a "legitimate, nondiscriminatory reason for its actions."  *Id.* (quoting *Niswander*, 529 F.3d at 720)).  If the defendant meets the burden, then the

---

[1] According to this provision, it is unlawful to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has a made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing . . . ." Ky. Rev. Stat. Ann. § 344.280.

6

plaintiff must demonstrate, by a preponderance of the evidence, that the legitimate reason is pretextual. *Id.* Paycor argues Sullivan cannot establish a *prima facie* case of retaliation.

A.

Addressing the first claim as to the report of Wolford's affair, Paycor argues that Sullivan's report to Gunnera did not constitute a protected activity. Sullivan disagrees, countering that a supervisor's favoritism of a subordinate based on a sexual relationship is discrimination as proscribed by KRS § 344.040, and therefore, a report of such favoritism amounts to a protected report of unlawful activity per KRS § 344.280.[2]

Two types of protected activities are recognized under Title VII and the KCRA: 1) "participation in a proceeding with the Equal Employment Opportunity Commission" and 2) "opposition to an apparent Title VII [or KCRA] violation." *Wasek v. Arrow Energy Servs. Inc.*, 682 F.3d 463, 469 (6th Cir. 2012). The case at bar concerns the latter type. To oppose an apparent KCRA violation, the plaintiff must have had at least a "reasonable and good faith belief that the opposed practices were unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (quoting *EEOC Compliance Manual* (CCH ¶ 8006)).[3]

Kentucky courts have not addressed the present factual scenario confronting the Court. However, this case is analogous to another case before this Court, *Stanley v. Insights Training Grp., LLC*, 2013 WL 76123 (W.D. Ky. Jan. 4, 2013). In *Stanley*, Judge Charles Simpson, construing

---

[2] Whether the paramour believed that Wolford or Paycor subjected her to discrimination is not asserted in the Complaint. Upon a common sense reading of the relevant statutes, a more likely case of protected activity would be present if the paramour expressed to Sullivan that she believed her relationship with Wolford constituted unlawful discrimination. Under that scenario, Sullivan may have engaged in a protected activity when she relayed such information to Gunnera; however, this is not asserted.

[3] Additionally, the plaintiff must have opposed the apparent unlawful activity in a reasonable manner. *Id.* Because neither party seems to dispute the reasonableness of the manner of Sullivan's opposition, the Court need not address this issue.

7

Kentucky law, determined that the plaintiff's "belief that favoritism for paramours constituted unlawful gender discrimination was not reasonable, and thus he cannot show that he engaged in a protected activity." *Id.* at *7. Judge Simpson reasoned that

> nothing about the favoritism [the plaintiff] complained of had to do with the protected characteristic of gender. . . . All other staff members, whether male . . . or female . . . , were equally negatively affected by the purported favoritism. Put another way, even accepting that [the plaintiff] had a reasonable factual basis for his complaints, the [employer] had no way to understand his complaints as relating to unlawful gender discrimination.

*Id.*[4]

Judge Simpson's decision is in accord with numerous other federal courts. *See, e.g., Schobert v. Ill. Dep't of Transp.,* 304 F.3d 725, 733 (7th Cir. 2002) ("Title VII does not, however, prevent employers from favoring employees because of personal relationships. Whether the employer grants employment perks to an employee because she is a protegé, an old friend, a close relative or a love interest, that special treatment is permissible as long as it is not based on an impermissible classification."); *Taken v. Okla. Corp. Comm'n,* 125 F.3d 1366, 1370 (10th Cir. 1997) ("Favoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification. [We] decline to extend Title VII to include consensual romantic involvements . . . ." (internal citation omitted)); *Becerra v. Dalton,* 94 F.3d 145, 149-50 (4th Cir. 1996) (holding that accepting sexual favors from a subordinate "does not amount to sexual

---

[4] The Court recognizes that this quotation is an extract from that portion of Judge Simpson's opinion relating to a male employee's complaint about his supervisor's relationship with a subordinate. However, Judge Simpson adopted the same analysis as to the female employee's claims for retaliation for complaining about the same supervisor's conduct. *Id.* at *8. Accordingly, Judge Simpson found the same reasoning applied regardless of the gender of the complainant. That *Stanley* involved both male and female plaintiffs, a factual distinction from the case *sub judice* concerning only one female plaintiff, does not make Judge Simpson's analysis any less persuasive here. In fact, *Stanley* serves to better illuminate the unimportance of gender to sexual favoritism retaliation claims.

discrimination" under Title VII); *DeCintio v. Westchester Cnty. Med. Ctr.,* 807 F.2d 304, 308 (2d Cir. 1986) ("Sexual relationships between coworkers should not be subject to Title VII scrutiny, so long as they are personal, social relationships."); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 520 (S.D.N.Y. 2010) ("[T]he law is clear that preferential treatment of a paramour is not unlawful because it does not discriminate against anyone on account of his or her gender.").

This Court agrees with Judge Simpson's analysis and that of the other courts cited above. The plaintiffs in *Stanley*, much like Sullivan, knew of, felt negatively affected by, and reported an ongoing, sexual relationship between their supervisor and a paramour. Nevertheless, Sullivan cannot meet the test for protected activity set forth in *Johnson.* As explained above, Wolford's alleged favoritism of his paramour did not harm Sullivan on account of her gender, the relevant protected characteristic. *Id.* at 521. Accordingly, Sullivan did not possess a reasonable and good faith belief she was opposing an unlawful practice for reporting her supervisor's relationship with his paramour. For the reasons set forth in *Stanley,* Sullivan did not oppose an apparent KCRA violation, and the report did not constitute a protected activity.

B.

Second, Sullivan contends that her pregnancy announcement was a protected activity under KRS § 344.030(8),[5] and that announcing her pregnancy resulted in retaliation under KRS § 344.040. While the Court does not dispute that asserting legally afforded rights in relation to or in the midst of a pregnancy can be protected activities, it does not find any basis for applying the same consideration to a mere announcement of one's pregnancy. Nothing about the announcement

---

[5] The provision defines that "[t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treater the same for all employment-related purposes . . . ." KY. REV. STAT. ANN. § 344.030(8).

9

amounts to opposition of a KCRA violation. Accordingly, Sullivan cannot plausibly establish a *prima facie* case for retaliation for her pregnancy announcement.

Because neither Sullivan's report of Wolford's relationship with a paramour nor her pregnancy announcement are protected activities, the Court concludes Sullivan has not established her retaliation claims. For this reason, the Court will sustain Paycor's Motion to Dismiss Count IV.

VI.

Finally, Sullivan claims Paycor committed fraud by falsely offering to refrain from contesting her unemployment benefits if she voluntarily resigned. She claims she relied upon this offer when she voluntarily resigned. Paycor seeks dismissal, arguing that the offer was not false and did not result in damages.

Under Kentucky law, a plaintiff must prove the following to establish a fraud claim: "(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentations; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Viewing the facts in a light most favorable to Sullivan, it is plausible that she can prove the elements needed establish a fraud claim. It is undisputed that Paycor told Sullivan her unemployment claim would not be contested, and Paycor does not yet dispute that Sullivan relied upon its assurance. However, serious questions remain as to whether the representation (1) was false and known to be false, (2) was intended to induce Sullivan to act, and (3) caused injury.

Further discovery of this claim will no doubt determine its future. For this reason, the Court will deny Paycor's Motion to Dismiss Count V.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss as to Sullivan's claims for constructive discharge in violation of KRS § 344.040 and retaliation in violation of KRS § 344.280 are SUSTAINED, and Counts III and IV of Sullivan's Complaint are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss as to Sullivan's claims for hostile work environment and fraud are DENIED and, consequently, Counts I, II, and V remain.

cc: Counsel of Record